Smith for the Appellant. Mr. Lau, if it pleases the Court, I will go through the elements. Do you want to reserve some time for rebuttal? Oh, yes. Seven minutes. Seven minutes. Okay, go ahead. Elements of fraud in 523A2. And the first on misrepresentation, even though there's some, I would say, strong arguments for our side that, for instance, the first listing, MLS, which was too severe. It said, this is a teardown. There's a cracked foundation. The foundation wasn't cracked at all, but it was subsiding. And that wasn't given to my client. He said it wasn't, but they had a witness who didn't get it signed for and didn't remember, but said, I usually do it. Now, unfortunately for us, and I'm probably saying this for the sake of my client who's on live stream, that the rules are different in this court. So if the judge, as she did, ruled against us on misrepresentation based on credibility, we don't get to argue and we don't get your honors to judge. Well, it's a pretty tough road to hoe. That's very tough. And then the other rule, and I'm going to switch track in about 20 seconds, but the other rule is that every inference will be, you know, taken in favor of the debtor, even if it's barely reasonable. So I'm not going to argue that we should win on that, the misrepresentation, but I am going to argue those same rules, even though applied support us on the other two elements, reliance and damages. Reliance, our view is there was an admission of no reliance by act, by a subsequent lawsuit, by the priors. Specifically, my client gave what you could say inquiry notice. There might be a problem with drainage. And actually, that's probably what happened. It wasn't a crack foundation. It was sinking when there was unprecedented rain. Can I stop you for one second? Because I think it's important to remember what the problem here is and what the duty is. The duty is not to weapon warrant that infallibly this is a drainage issue. The duty is to make a disclosure. And that's what your client didn't do. That's the concern, right? At least that's what the court found your client didn't do. Well, it's part of the reason I'm conceding on misrepresentation. However, he did make what would be called inquiry disclosure. There's a real drainage problem. However, he did check some boxes that were incorrect. So I'm not going to argue with that one. I mean, I mean, if you think the result would have been different and I hate to give people hypotheticals of the lectern, but would the result have been different if he would have said, you know, maybe it's drainage, but definitely there were some cracks and I patched them. Would that have been different, do you think? I think if that was happened, was said, the priors, the buyers would have went and hired their own expert. In fact, but that's what they did. So I'll have to answer the court. No, the different, not being facetious. No, they would have hired their expert. They might have been more adamant, but they hired their expert. Their expert checked it out, didn't find it. They blamed him for the, their own expert they blamed for the damage. They sued in a subsequent suit. It was admitted on the stand. They sued their own expert. And so you should have found it. So it's, I think it fits the subsequent events. And, and did you cite us a case about the superseding fault issue? Because I don't remember that you did. I'm not sure. I'm not sure. But, and I might say it doesn't go under the but for rule. Okay. I, I don't remember that I got a case of whether we got a case about it. Okay. Thank you. Yeah. So I'm, I'm, I'm saying, you know, I can think of a counterargument somewhat like in a malpractice case of but for, but if you had said this but I think it just falls in the standard subsequent not reliance and get your own expert. But then the one that really the real, just the real thrust of this argument is damages. And I think there's no evidence for above 13,000. Their appraiser was on the stand. And he obviously, he knew that in this case, it had to be an historical appraisal. So he, he, here we are 11 months after he checks it after the sale, the alleged fraudulent transfer, we'll call it the fraudulent transfer. And he obviously knows the rule that the measure of damages in sale of real estate is the difference in value of what was promised and what was got on the day of you know, I asked him questions and he said historical appraisal, but then he was just giving downgrades from comparables by the present damages. So you know, just on comparables is one thing, but the difference, the equity that supposedly was lost was done because of the downgrades. And that was 10 months later. Okay. First of all, it's a factual issue, right? So the judge had to be clearly, yes, yes. But, but that's right. But my argument now, and I understand the other problem about trying to say no facts supporting an opinion, but in this case there, there's no facts with an expert can give a conclusionary opinion, which he did in a strange way. He said, yes, I took that into account. I took a market reaction. Well, reaction to what? First of all, the court knows that an expert opinion must is, can be on hypotheticals that match the facts, but ultimately the opinion has to have the factual basis. And it can, in my view is it's zero. And there's another factual basis for, and that reason is the, he says the market, I, you know, what does that mean? I just judged back when, what the market reaction to what, to what the damages were at the time he looked. Well, even the priors seemed to agree they were worse. They had worsened because the priors made a point of saying there was a unprecedented rainstorm, which I guess we're having one now, but you know, you could seven or eight years where you don't have a rainstorm like that. And because of the rainstorm, cracking happened. So they were guessing, and probably correctly, that there's more subsistence because of the much more damage now. And you can't say what's the market reaction going to be to the damage at present. You really should say, what's the market reaction to what the property was like when the sale happened? Now, I'm not setting up an, I was going to say, but wouldn't a, an intelligent buyer look at existing subsistence caused by rain to date and think, oh my goodness, if there's more rain in the future, there could be worse. Wouldn't, wouldn't a buyer look into the future that way? Well, the buyer, I mean, to be fair to them, they may be not even thinking of that, because even if there's big rains, your house shouldn't really subside and crack. That's, something's wrong there. I'm just saying, and I'm, what I'm really arguing for this court to do is just reduce the damage as to what the proof really shows. And that's about 13,000, because if we take the appraiser's word, I'm looking at the reaction of the market, we have that. The priors had a subsequent buyer. They disclosed the damage about the same way my client disclosed it. But that, I mean, don't we have to just ignore what the appraiser said about why the value was significantly less at the time? Is that what you want us to do? I, I, I'm not going to pick the word ignore. I'm going to say it's based on zero evidence and the right evidence that actually mentioned. So, so is it your thesis that, in fact, there really wasn't any material difference between what the priors paid and what they should have paid back when? No, I, saying there was, there was, this is before I, you know, reserve the time. Okay, I'm sorry. Because it actually fits the description and that is how did the market react? Well, we have that. They listed it for sale and they never, it was just assumed, nobody even asked that they listed lowballed it because of the damage. But no one asked them that. They could have been asked, did you list it for sale low? Now, I know the listing doesn't carry the day with value, but that goes both ways. But what happened is we did have a willing, sort of independent buyer that they sold it to, who knew about, was told the same things that my client had said. There's a lawsuit about this. There's a subsiding foundation. Those people, the clients, they didn't say they were listing it for a lowball amount. That seems to be the measure, $13,000. Further, the priors never even repaired it during all this time and they had mentioned at the beginning that they flipped property. I assume sometimes they repaired it. They did do some improvements, but sometimes they repaired it and they chose not to. Lots of things are assumed in this case that needed evidence, such as that improvements enhance fair market value. It might sound like it, but you need proof. It doesn't necessarily happen. Not true. And even the fact the first MLS is treated sort of like written in stone, but we don't have the person to talk about it. Well, it's not written in stone as to this is necessarily what's wrong. It's written in stone as there's a problem here. You should tell someone about it. Those are two very different things. I'm conceding on that, but it wasn't the fact that it was a teardown. That was really, it was cracked. It wasn't cracked. This is a teardown. We don't have the person there, but he's treated like what he's saying is gospel. But I'm just arguing on damages. And if you look at the appraiser's testimony, it's a conclusion that's cryptic, but also not based on facts. And if it is on the market reaction, we have the market reaction. But it has to be clearly erroneous too, right? I think there'd be a, no, it has to be based. That might apply to a judge, but no, I would say it has to be based on evidence. I mean, I looked at her, I looked at her findings on that point. They were pretty quick. Well, based on evidence, it has to be based on evidence. Another way he did it was to say, well, the appreciation was, oh, what 18% and all the others were 36%. Well, that's assuming that would be a good argument if the amount of damage stayed the same, but the reason for the less appreciation was it was subsequent more damage by an unprecedented rainstorm and unprecedented subsistence. So I, if you look again, looking at it, it's very unclear. He doesn't mention any facts in the record. He has the conclusionary thing. I decided what the market would have done and we know what the market would have done. I'll reserve the remainder, Your Honor. Thank you. All right, Mr. Malik, please go ahead. I'm sorry, we can't hear you. You're muted. They warned me about that in the training. Most common words in the English language these days, you're muted. Go ahead, please. Good morning, Presiding Justice, Associate Justices. May it please the Court. I will touch briefly on a couple of items. First, intent to defraud is a question of fact. Since fraudulent intent can rarely be proven, it must be inferred from the surrounding circumstances. We've briefed this issue at length. I don't want to get too much into the nitty gritty, but, I mean, here we have a California licensed real estate agent who had done over 50 transactions prior to his own purchase of the property. He walked the property and then in his testimony, he pretends he didn't see any cracks or any damage that was patently obvious to anyone who walked through the property. The AVID prepared by his own agent says, our expert found foundation damage. The MLS, I mean, it was obvious to anyone at the time the appellant purchased this property. There was something going on here and it should have been disclosed. The fact that the appellant had covered up the cracks, had covered up the damage, by the time the appellees had purchased it, doesn't create some sort of intervening or supervening cause. It doesn't create a reliance issue. The fact that an inspector missed something because it had been covered up can't be used to relieve the defendant of liability. I would also like to point out that the expert witness had conducted a historical appraisal. He did rely on repair estimates from third parties, which he's allowed to do. Those estimates were dated about a year from when the appellants purchased the property. I don't think there's anything wrong with what the appraiser did. It's in his report. He wrote a report at length, even though his oral testimony on point was short, because we did initial testimony by declaration with the exhibits attached. His report is well-founded. It lists all the facts. It lists all the assumptions, simply stating that the property is... I'm sorry, Your Honors. Can I ask you a question to see if I'm getting where you're going? The fundamental point is it's not as if the appraiser would have been unable to render the kind of report and opinion that he did. There's nothing about the fact that an appraiser looks back a year that makes it inherently unreliable. And you may disagree with the conclusions, right? But it's not as if it's so speculative that it's not part of what an expert can do, correct? Yes. And experts do this all the time. Yes, Your Honors. Again, you may think they're wrong, but it's not as if it's not out of the question, right? Yes, Your Honors. So the historical aspect of this is not by itself unsound. That is exactly the point I was making. Okay. And which also comes to the conclusion that the damages are supported, as indicated in the appraiser's testimony. Everything else in the neighborhood went up significantly. This property didn't. I mean, what wasn't in the appraiser's testimony, but what we all know is at the time this property sold, the real estate market was on fire. If there was some underselling, which counsel could have investigated, counsel for the appellant didn't question the plaintiffs on their sale. He just went with the assumption, well, they discounted at $13, and therefore that's the measure of damages, and that's not correct. That's all I have, unless the panel has any additional... Let me follow up on that point. I think what you might be saying is that there's a public policy reason why we have a measure for damages for fraud, and it is the difference between it's fairly strict. It's the difference between what somebody paid for something and what it was worth. What Mr. Smith is telling us, the what it was worth part may not be very reliable here. I do think that's a question of fact, and there wasn't any counter-testimony, so that's, I think, a bit of a problem. But I think the follow-on to that is that we have a public policy in enforcing that we don't want subsequent events that might have kind of benefited somebody one way or the other to change that. Is that a fair synopsis? Yes. Yes. And I actually would like to bring up one last point about the imputed notice. There was no imputed notice from these disclosures. These disclosures were as vague as can be. Simply saying there was a drainage issue wouldn't put anybody on notice that there's subsidence, that there may be a foundation issue. It was just, it was too vague. California law requires a vendor to tell the truth, the whole truth, and nothing but the truth, to borrow from our profession. But that didn't happen here. He just said, found there was just some drainage issues. He could have elaborated saying there was some subsidence issues. He actually testified, and if, and I know the court didn't take his credit, but Lydia's, did not find the appellees testimony, sorry, the appellant's testimony to be credible, but he admitted that there was some sort of issue with subsidence of the property, which if not addressed properly could provide for damage to the property. Instead of giving the purchasers an opportunity to investigate this matter, he just said, well, there was just some drainage issues, and he just minimized it. I think that also creates a huge problem for an appellant who's claiming that, you know, he didn't know anything was wrong with the property. Well, one last question for you from my end. When I went back and looked recently at the court's findings and conclusions, the entire discussion of damages is about a paragraph. It's a little quick, and there clearly are some, I mean, Mr. Smith believes that this might be inherently unreliable because of the time lag. I'm not sure I'm necessarily agreeing with that, but there were some other issues about how he got to the number. Is there a problem in that the bankruptcy court didn't elaborate a bit more about how that 135 was arrived at? It is a little conclusory, so help me out with that. It is conclusory, but the court had the appraisal, and I'm assuming the court found the appraisal to be instructive, informative, and probative, and relied on that informing its decision. I mean, this is the same thing. It's not like the court varied from the conclusions of the appraisal in assessing the market value of the property at the time of the sale to the plaintiffs. Or failed to consider some other evidence of which there just wasn't any, right? That is correct. Okay. Okay. Any further questions? Thank you. All right. Thank you very much. Thank you, Your Honors. Back to you, Mr. Smith. Thank you, Your Honors. Conceding everything counsel said, I don't think anyone would agree or argue that if the appraiser just got up and said, in my infinite wisdom, I find a discount of $180,000, whatever, because, you know, things I saw just defer to me, judge. Which seems to be what the counsel is saying when he said, well, the judge looks at the report. So he did, it was conclusionary, where he said, it was $180,000 was the appraisal. I'll give a discount of $80,000. And where did that come from? Just, you know, out of based on the market reaction. But we do have a market reaction. We have the buyers from the prior, the priors, and they gave a disclosure about the same as my client. They didn't tell about the first MLS. They just said there's litigation and people, and, you know, we allege that we weren't disclosed about the foundation, which is like saying, now you're on notice, go look. I'm not arguing about misrepresentation, but the disclosure they felt was good enough was the same as mine and did not mention the first MLS. The new buyers from the priors bargained it down $13,000. They knew about it. So we don't have to speculate how the market reacted. That's how it reacted. Aren't you assuming that the asking price was at what the market price would have been if there were no damage? Aren't you making that assumption? I think you're assuming the opposite. Maybe you're saying, I am assuming everybody asks, usually you're asking for a higher price. You expect bargaining. But that's the assumption, unproven, just unspoken, assuming that they had listed it low because of the foundation problem. They fixed it up. They could have asked. They could have said, did you give it a low price? That's where we're starting because of the foundation. They did not. I think because there was nothing being said, I think the reasonable assumption, like the sellers knew about these problems, why isn't it reasonable to assume that they started lower? To say that the damage is only $13,000 because it was bargained down $13,000 from the X number that they picked, well, what's to say that the X number was lower than the Y number? The sellers already brought it down lower. I don't understand how this subsequent negotiations is limited to what their asking price is. Your Honor, it's kind of saying both sides should guess. They're plaintive as the burden of proof. I think it's a bit of a stretch and a bit of a further guess that a seller is going to say, well, this problem is bad enough, so I'll downgrade, I'll list it low just from the beginning. I think they could have been asked that and it's a more reasonable assumption than the usual way things happen is that people ask for at least market value. Well, they ask for higher than market value. But what the plaintiffs proved here was fraud. And there's a very well established measure for fraudulent damages. And what you're basically asking us to do is ignore that and put all the burden on the plaintiff to justify this through a subsequent sale, which is just not the standard. How is that the standard? Well, I think the court's using the word fraud to mean the first element, misrepresentation. It was a conceit on that. There was not thorough enough misrepresentation. There wasn't complete representation. So that counts as misrepresentation. That doesn't mean card bonds for damages or someone will just give an unsupported opinion, an expert opinion on damages. That's a whole other question. You're asking us basically to ignore that is my problem. No, not ignored. The one indication of what the damages are, the subsequent sale between willing and motivated buyer and seller is better than somebody just say, I gave a discount because I figured out how the market reacts way back when, when conditions were different. Nobody, I believe, argues an expert opinion carries the day without a factual basis. And I think there is not one for the 100, 180. It's a number picked out of thin air. It wasn't explained. There is one for 13,000. Thank you. All right. Thank you very much. The matter is submitted. That's our last matter. So court's in recess. Thank you. All rise.
judges: FARRIS, LAFFERTY, CORBIT